USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/19/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY APONTE and ANGELO GABRIEL ALVES MARQUES, | |
| Plaintiffs, | |
| -against- | |
| CLINTON STREET PIZZA INC. d/b/a RIZZO'S FINE PIZZA and AMEDEO ORLANDO, | |
| Defendants. | |

22-CV-3188 (DEH) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. DALE E. HO**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Nancy Aponte and Angelo Gabriel Marques are former employees of defendant Clinton Street Pizza Inc. d/b/a Rizzo's Fine Pizza (CSP), owned by defendant Amedeo Orlando. In this action, plaintiffs seek damages for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and N.Y. Labor Law (NYLL) § 190 *et seq.*, as well as emotional distress damages for sexual harassment, pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-107 *et seq*. *See* Am. Compl. (Dkt. 39) ¶¶ 1-4. Neither CSP nor Orlando answered or otherwise defended the claims against them.

On February 7, 2023, the Hon. Kimba M. Wood, United States District Judge, granted plaintiffs' motion for a default judgment against CSP and Orlando (collectively, the Defaulted Defendants), finding that they were "properly served with a copy of the summons and Plaintiffs' Amended Complaint," *Aponte v. Clinton St. Pizza Inc.*, 2023 WL 1795189, at *2 (S.D.N.Y. Feb. 7, 2023), and that plaintiffs "have asserted a proper basis for liability" for their FLSA, NYLL, Title

VII and NYCHRL claims. *Id*. at *3, 4. Judge Wood then referred the matter to me for an inquest into damages. (Dkt. 97.) [1]

For the reasons that follow, plaintiff Aponte should be awarded damages in the aggregate amount of $112,232.00, comprising $46,116.00 in compensatory damages for unpaid minimum under the NYLL, $46,116.00 in liquidated damages under the NYLL, and $20,000.00 in emotional distress damages for her sexual harassment claim under the NYCHRL, together with prejudgment interest in the amount of $11.37 per day on her wage claims since October 7, 2016.

Plaintiff Marques should be awarded damages in the aggregate amount of $124,910.00, comprising $52,455.00 in compensatory damages for unpaid minimum and overtime wages under the NYLL, $52,455.00 in liquidated damages under the NYLL, and $20,000.00 in emotional distress damages under the NYCHRL, together with prejudgment interest in the amount of $12.93 per day on his wage claims since May 1, 2017.

Because plaintiffs failed to submit either their attorneys' time records or any documentation of their expenses, as required by my April 4, 2023 Scheduling Order for Damages Inquest (Sched. Order) (Dkt. 98), I recommend that no fees or costs be awarded.

## I.    BACKGROUND

### A.    Factual Allegations

The Defaulted Defendants owned and operated a Manhattan pizzeria, known as Rizzo's, where both plaintiffs worked. Am. Compl. ¶¶ 10-11. Orlando was a part owner of Rizzo's and exercised supervisory authority over plaintiffs. *Id*. ¶¶ 14-15. Plaintiff Aponte was employed as a server from June 2014 through February 2019, working approximately 36 hours per week, for $5.00 per hour. *Id*. ¶¶ 20-25. Orlando was her "direct manager." *Id*. ¶ 27. Plaintiff Marques was

---

[1] On October 19, 2023, the case was reassigned to the Hon. Dale E. Ho, United States District Judge. (Dkt. 100.)

employed as a cashier from August 2015 through February 2019, working approximately 70 hours per week, for $9.00 per hour. *Id.* ¶¶ 42-45. Marques did not receive any overtime pay, and neither plaintiff received any spread-of-hours pay. *Id*. ¶¶ 26, 46. Moreover, defendant Orlando "took money out of the tip jar," using some of it to pay employee wages and keeping some for himself. *Id.* ¶¶ 55-56. Additionally, the Defaulted Defendants failed to provide accurate wage statements and notices as required by NYLL §§ 195(1) and 195(3). *Id.* ¶ 63.

Both plaintiffs were sexually harassed by Orlando, resulting in emotional distress. *See* Am. Compl. ¶¶ 28, 48, 54. Orlando told Aponte that he wanted to have sex with her and that she made him feel "horny." *Id.* ¶¶ 28-31, 33. Additionally, when Aponte stood on a chair to place wine bottles on designated shelves, Orlando "would frequently touch and grab her behind her legs and her back." *Id*. ¶ 34. Orlando did not touch Marques inappropriately. However, he made fun of Marques's sexual orientation, *id*. ¶ 48, telling his male co-workers to "'watch out' or 'be careful' because Marques liked men and he would like to have sex with his fellow co-workers," *id*. ¶ 49, and asking Marques if he wanted to have sex with or date various male customers. *Id*. ¶ 50.

**B.     Procedural History**

Plaintiffs filed their original Complaint (Dkt. 1) on March 6, 2020, under Docket No. 20-CV-2037, against CSP, Orlando, and two additional individual defendants, Alexander Lyudmir and Francesco Taormina. On April 17, 2020, plaintiffs served a summons and the Complaint upon CSP. (Dkt. 10.) On September 14, 2021, they sought a default judgment, based on their original Complaint, against CSP and Taormina. (Dkt. 26.) On May 17, 2022, Judge Wood denied that motion, because the Complaint "failed to establish a proper basis for liability with respect to [plaintiffs'] federal law claims," *Aponte v. Clinton St. Pizza Inc.*, 2021 WL 1961646, at *2 (S.D.N.Y. May 17, 2021), but gave plaintiffs an opportunity to amend. *Id*. at *6. Plaintiffs filed

their Amended Complaint on July 23, 2021 (Dkt. 39) and served it on CSP on July 27, 2021. (Dkt. 40.) They served a summons and the Amended Complaint upon Orlando on September 9, 2021. (Dkt. 49.)

In early 2022, plaintiffs and Taormina reached a settlement agreement and consented to my jurisdiction for purposes of approving that settlement. (Dkts. 62, 66.) On April 19, 2022, plaintiffs' claims against the remaining defendants were severed, pursuant to Fed. R. Civ. P. 21, and since then have proceeded under Docket No. 21-CV-3188. On June 10, 2022, plaintiffs accepted an offer of judgment from defendant Lyudmir (Dkt. 70), leaving only plaintiffs' claims against CSP and Orlando for adjudication.

On August 18, 2022, plaintiffs moved for a default judgment against CSP and Orlando (Dkts. 77, 78), and on February 7, 2023, Judge Wood granted that motion, ruling that both Defaulted Defendants were properly served and that the Amended Complaint stated claims against both of them pursuant to the FLSA, the NYLL, Title VII, and the NYCHRL. *Aponte*, 2023 WL 1795189, at *2-4.

On April 4, 2023, after the case was referred to me for an inquest into damages, I directed plaintiffs to file proposed findings of fact and conclusions of law, including "evidence sufficient to permit the Court to 'ascertain the amount of damages with reasonable certainty.'" Sched. Order ¶ 2 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). If plaintiffs requested an award of attorneys' fees or other expenses, they were required to submit "contemporaneous time records authenticated by counsel and showing, for each attorney or other timekeeper, the date of service, the hours expended, the hourly rate charged (if applicable), and the nature of the work performed," as well as "evidence documenting plaintiffs' costs and

expenses." *Id*. ¶ 5. If the Defaulted Defendants wished to respond to plaintiffs' inquest submissions, they were required to do so by June 5, 2023. *Id*. ¶ 8.

Plaintiffs filed their Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. 99) on May 4, 2023, supported by affidavits signed by each plaintiff, but neglected to serve these materials on the Defaulted Defendants, as required. *See* Sched. Order ¶ 7. On June 4, 2024, the Court brought this lapse to plaintiffs' attention and extended the Defaulted Defendants' time to respond to plaintiffs' inquest submissions until 30 days after plaintiffs served them. (*See* Dkt. 103.) On June 5, 2024, plaintiffs served their Proposed Findings and supporting affidavits on both Defaulted Defendants by mail, along with the relevant orders of this Court. (*See* Dkt. 104.) However, the Defaulted Defendants did not file any response.

With respect to their FLSA and NYLL claims, plaintiffs seek compensatory damages of $99,458.67 for unpaid minimum and overtime wages ($47,112.00 for Aponte and $52,346.67 for Marques); liquidated damages in an equal amount; and prejudgment interest at 9%. *See* Prop. Findings ¶¶ 12, 21-22, 32-33, 84-86, 88-89, 92-93, 97. In addition, each plaintiff seeks $10,000.00 in statutory damages for defendants' wage statement and wage notice violations. *Id*. ¶¶ 39-40.[2] With respect to their sexual harassment claims, each plaintiff seeks $250,000.00 in emotional distress damages. Prop. Findings ¶¶ 91, 95.

## II.   ANALYSIS

### A.   Legal Standards for Determining Damages

Although the Court must accept all well-pleaded facts as true when determining liability following a default, the Court need not – and indeed cannot – rely on the allegations in the

---

[2] Plaintiffs do not calculate any damages for unpaid spread-of-hours pay and are thereby deemed to have abandoned that claim.

plaintiffs' pleadings to establish their damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, plaintiffs are required to substantiate their damages claim with "admissible, authenticated evidence." *McLaughlin v. Barron*, 2018 WL 1872535, at *2 (S.D.N.Y. Jan. 24, 2018), *adopted*, 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018); *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[T]here must be a basis upon which the court may establish damages with reasonable certainty.").

Where, as here, defendants defaulted without engaging in discovery, and thus have not turned over employment records or other evidence, the Court may credit the plaintiffs' "recollections regarding their hours and pay" in conducting its damages inquest. *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018). However, "the Court must ensure that [p]laintiffs' approximations and estimates are reasonable and appropriate." *Id.*; *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 378 (E.D.N.Y. 2012) (finding that plaintiffs' method of estimating hours worked by averaging the hours listed in the available payroll records with the hours recalled and described in plaintiffs' declarations was reasonable where defendants failed to maintain adequate records).

### B.   Jurisdiction and Venue

This Court has federal question jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. Moreover, defendant CSP is a New York corporation, *see* Am. Compl. ¶ 12, operating a restaurant in Manhattan, *id*. ¶ 13, and plaintiffs' claims against defendant Orlando arise out of his management of and conduct at that restaurant. *See id*. ¶¶ 27-34, 48-50, 55-60. I am therefore satisfied that personal jurisdiction may be properly exercised over both Defaulted Defendants,

pursuant to N.Y.C.P.L.R. §§ 301 and/or 302(a)(1) and (a)(2), and that venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

### C.    Statute of Limitations

The statute of limitations under the FLSA is two years, *see* 29 U.S.C. § 255(a), unless the violations were "willful," in which case the limitations period increases to three years. *McLaughlin v. Richland Show Co.*, 486 U.S. 128, 129-33 (1988). Although plaintiffs allege willfulness only generally, *see* Am. Compl. ¶¶ 66, 75, 83-84, defendants' default, "in itself, may suffice to support a finding of willfulness." *Gonzalez Mercedes v. Tito Transmission Corp.*, 2018 WL 7291452, at *4 (S.D.N.Y. Dec. 6, 2018) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 282, 297 (E.D.N.Y. 2011), *adopted sub nom. Mercedes v. Tito Transmission Corp.*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019); *accord Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 315 (S.D.N.Y. 2014). Therefore, the statute of limitations here is three years, meaning that plaintiffs may recover damages under the FLSA for work performed on and after March 6, 2017.

The statute of limitations for claims under NYLL is six years, regardless of willfulness. *See* NYLL § 198(3). Therefore, plaintiffs may recover damages under the NYLL for work performed on and after March 6, 2014.

While plaintiffs are entitled to recover damages for unpaid wages under both the FLSA and NYLL, they may "not recover twice." *Gonzales Mercedes*, 2018 WL 7291452, at *5 (quoting *Cao v. Wu Liang Ye Lexington Rest. Inc.*, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)). Rather, plaintiffs "may recover under the statute which provides the greatest amount of damages." *Id.* (quoting *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)). Here, because both plaintiffs began

working at Rizzo's more than three years before they filed this action, *see* Am. Compl. ¶¶ 20, 42, the NYLL will provide the largest award.

With respect to plaintiffs' NYCHRL claims, the statute of limitations is three years from the date of the "alleged unlawful discriminatory practice[.]" N.Y.C. Admin. Code § 8-502(d); *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 573-74. (S.D.N.Y. 2011). However, because they allege a continuing course of discriminatory conduct, they may utilize the "continuing violation" doctrine to seek damages for harassment prior to that date. *See Munjal v. Emirates*, 2022 WL 204775, at *6-8 (S.D.N.Y. Jan. 24, 2022) (noting "NYCHRL's more generous continuing violation standard," compared to Title VII and the New York State Human Rights Law); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) (similar).

Plaintiff Aponte (but not plaintiff Marques) also seeks damages for sexual harassment under federal law. *See* Am. Compl. ¶¶ 3, 85-90. Title VII requires that a plaintiff file a charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e). Upon the issuance of a right-to-sue letter by the EEOC, the plaintiff has 90 days to file a civil lawsuit. 42 U.S.C. § 2000e-5(f)(1). Here, plaintiff Aponte alleges that she filed a charge with the EEOC, obtained a right-to-sue letter, and commenced this action within the next 90 days. *See* Am. Compl. ¶ 9. She does not state when she filed her EEOC charge. However, since she expressly alleges a continuing pattern of sexual harassment throughout her employment, amounting to a hostile work environment, *see* Am. Compl. ¶ 28, she may also utilize the "continuing violation" doctrine to seek Title VII damages arising out of conduct that took place more than 180 days before she filed her EEOC charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002) (holding that the continuing violation doctrine does not apply to "discrete acts" outside of the applicable statute of limitations,

but that since "the incidents constituting a hostile work environment are part of one unlawful employment practice," the employer "may be liable for all acts that are part of this single claim," as long as the plaintiff files her charge within 180 days "of any act that is part of the hostile work environment"); *Dimitracopoulos*, 26 F. Supp. 3d at 212 (noting that after *Morgan*, for federal law purposes, "'the continuing violation' doctrine applies only to harassment claims").

**D.      Application**

Both plaintiffs have provided admissible evidence of their unpaid minimum and overtime wages, as well as their emotional distress, in the form of their own sworn affidavits. *See* Marques Aff. (Dkt. 99-1); Aponte Aff. (Dkt. 99-2). Both affidavits are dated September 11, 2020, and were first submitted to the Court on September 14, 2020 (*see* Dkt. 26), in support of plaintiffs' initial (unsuccessful) motion for the entry of a default judgment against CSP and Taormina.

**1.      Unpaid Minimum and Overtime Wages**

*a.      Nancy Aponte*

From June 2014 to February 14, 2019, plaintiff Aponte worked four shifts each week, totaling 36 hours: (1) Wednesdays from 4:00 p.m. to 11:00 p.m.; (2) Thursdays from 4:00 p.m. to 11:00 p.m.; (3) Fridays from 3:00 p.m. to 2:00 a.m.; and (4) Saturdays from 3:00 p.m. to 2:00 a.m. *See* Aponte Aff. ¶ 13. She was paid $5.00 per hour, totaling $180.00 per week, throughout her employment. *See id.* ¶¶ 6-11.

In 2014, the minimum wage in New York was $8.00 per hour. *See* NYLL § 652(1). Thus, plaintiff Aponte is entitled to an additional $3.00 for each hour she worked at Rizzo's in 2014, or $108.00 for each week ($3.00 x 36 hours). Because she worked for seven months (approximately 30 weeks) in 2014, *see* Aponte Aff. ¶ 6, she is entitled to $3,240.00 ($108.00 times 30 weeks) in unpaid minimum wages for 2014.

In 2015, the minimum wage raised to $8.75 per hour. *See* NYLL § 652(1). Thus, plaintiff Aponte is entitled to an additional $3.75 for each hour she worked at Rizzo's in 2015, or $135.00 for each week ($3.75 times 36 hours). Because she worked the entire year (52 weeks), *see* Aponte Aff. ¶ 7, she is entitled to $7,020.00 ($135.00 times 52 weeks) in unpaid minimum wages for 2015.

In 2016, the minimum wage raised to $9.00 per hour. *See* NYLL § 652(1). Thus, plaintiff Aponte is entitled to an additional $4.00 for each hour she worked at Rizzo's in 2016, or $144.00 for each week ($4.00 times 36 hours). Because she worked the entire year (52 weeks), *see* Aponte Aff. ¶ 8, she is entitled to $7,488.00 ($144.00 times 52 weeks) in unpaid minimum wages for 2016.

In 2017, the minimum wage raised to $11.00 per hour for "large" employers (with 11 or more employees). *See* NYLL § 652(1)(a)(i). Since defendants "had at least fifteen (15) employees working in the restaurant," Am. Compl. ¶ 19, plaintiff Aponte is entitled to an additional $6.00 for each hour she worked at Rizzo's in 2017, or $216.00 for each week ($6.00 times 36 hours). Because she worked the entire year (52 weeks), *see* Aponte Aff. ¶ 9, she is entitled to $11,232.00 ($216.00 times 52 weeks) in unpaid minimum wages for 2017.

In 2018, the minimum wage raised to $13.00 per hour for "large" employers. *See* NYLL § 652(1)(a)(i). Thus, plaintiff Aponte is entitled to an additional $8.00 for each hour she worked at Rizzo's in 2018, or $288.00 for each week ($8.00 times 36 hours). Because she worked the entire year (52 weeks), *see* Aponte Aff. ¶ 10, she is entitled to $14,976.00 ($288.00 times 52 weeks) in unpaid minimum wages for 2018.

Finally, in 2019, the minimum wage raised to $15.00 per hour for "large" employers. *See* NYLL § 652(1)(a)(i). Thus, plaintiff Aponte is entitled to an additional $10.00 for each hour she worked at Rizzo's in 2019, or $360.00 for each week ($10.00 times 36 hours). Because she only

10

worked until February 14, 2019 (approximately six weeks), *see* Aponte Aff. ¶ 11, she is entitled to $2,160.00 ($360.00 times six weeks) in unpaid minimum wages for 2019.

Given that plaintiff Aponte never worked more than 40 hours per week, she is not entitled to overtime pay. Overall, therefore, plaintiff Aponte is entitled to $46,116.00 in compensatory damages for her unpaid minimum wages.

b.      *Angelo Marques*

From August 2015 to February 2019, plaintiff Marques worked seven days per week, totaling 70 hours: Mondays from 4:00 p.m. to 12:00 a.m.; Tuesdays from 4:00 p.m. to 12:00 a.m.; Wednesdays from 4:00 p.m. to 12:00 a.m.; Thursdays from 4:00 p.m. to 12:00 a.m.; Fridays from 12:00 p.m. to 1:00 a.m.; Saturdays from 12:00 p.m. to 1:00 a.m.; and Sundays from 12:00 p.m. to 12:00 a.m. *See* Marques Aff. ¶ 5. Marques was paid $9.00 per hour, totaling $630.00 per week, throughout his employment at Rizzo's, without any premium for his overtime hours. *See id.* ¶ 4.

In 2015, the minimum wage in New York was $8.75 per hour, and in 2016 it was $9.00 per hour. *See* NYLL § 652(1). Consequently, Marques is not entitled to any additional wages for the first 40 hours he worked each week during those years.

In 2017, the minimum wage raised to $11.00 per hour for "large" employers. *See* NYLL § 652(1)(a)(i). Thus, plaintiff Marques is entitled to an additional $2.00 for each regular hour he worked at Rizzo's in 2017, or $80.00 for each week ($2.00 times 40 hours). Because he worked the entire year (52 weeks), *see* Marques Aff. ¶ 7, he is entitled to $4,160.00 ($80.00 times 52 weeks) in unpaid minimum wages for 2017.

In 2018, the minimum wage raised to $13.00 per hour for "large" employers. *See* NYLL § 652(1)(a)(i). Thus, plaintiff Marques is entitled to an additional $4.00 for each regular hour he worked at Rizzo's in 2018, or $160.00 for each week ($4.00 times 40 hours). Because he worked

the entire year (52 weeks), *see* Marques Aff. ¶ 10, he is entitled to $8,320.00 ($160.00 times 52 weeks) in unpaid minimum wages for 2018.

Finally, in 2019, the minimum wage raised to $15.00 per hour for "large" employers. *See* NYLL § 652(1)(a)(i). Thus, plaintiff Marques is entitled to an additional $6.00 for each regular hour he worked at Rizzo's in 2019, or $240.00 for each week ($6.00 times 40 hours). Because he worked for only one month (approximately four weeks) in 2019, *see* Marques Aff. ¶ 11, he is entitled to $960.00 ($240.00 times 4 weeks) in unpaid minimum wages for 2019.

If an employee works more than 40 hours in a week, he is entitled to an overtime rate of one and a half times his "regular rate" of pay for each overtime hour worked. *See* 12 N.Y.C.C.R.R. § 146-1.4. If the employee's regular rate of pay is at or below the prevailing minimum wage, his overtime rate is equal to one and one half times the minimum wage. *Martinez v. Dannys Athens Diner Inc.*, 2017 WL 6335908, at *4 (S.D.N.Y. Dec. 5, 2017); *Baltierra v. Advantage Pest Control Co.*, 2015 WL 5474093, at *5 (S.D.N.Y. Sept. 18, 2015). Throughout Marques's employment at Rizzo's, he worked 70 hours per week, *see* Marques Aff. ¶ 4, and was therefore entitled to overtime pay for 30 hours per week.

Because Marques's regular rate of pay in 2015 and 2016 was $9.00, which was at or above the then-prevailing minimum wage, his overtime rate, during those years, was $13.50 per hour. Thus, plaintiff Marques is entitled to an additional $4.50 for each overtime hour he worked at Rizzo's in 2015 and 2016, or $135.00 for each week ($4.50 times 30 hours). Because he worked for four months (approximately 17 weeks) in 2014 and the entire year (52 weeks) in 2016, *see* Marques. Aff. ¶¶ 7-8, he is entitled to $9,315.00 ($135.00 times 69 weeks) in unpaid overtime wages for 2014 and 2015.

Because the applicable minimum wage in 2017 was $11.00 per hour, Marques's overtime rate, for 2017, was $16.50 per hour. However, he was only paid $9.00 per hour. *See* Marques Aff. ¶ 4. Thus, plaintiff Marques is entitled to an additional $7.50 for each overtime hour he worked at Rizzo's in 2017, or $225.00 for each week ($7.50 times 30 hours). Because he worked the entire year (52 weeks), *see* Marques. Aff. ¶ 9, he is entitled to $11,700.00 ($225.00 times 52 weeks) in unpaid overtime wages for 2017.

Because the applicable minimum wage in 2018 was $13.00 per hour, Marques's overtime rate, for 2018, was $19.50 per hour. However, he was only paid $9.00 per hour. *See* Marques Aff. ¶ 4. Thus, plaintiff Marques is entitled to an additional $10.50 for each overtime hour he worked at Rizzo's in 2018, or $315.00 for each week ($10.50 times 30 hours). Because he worked the entire year (52 weeks), *see* Marques Aff. ¶ 10, he is entitled to $16,380.00 ($315.00 times 52 weeks) in unpaid overtime wages for 2018.

Finally, because the applicable minimum wage in 2019 was $15.00 per hour, Marques's overtime rate, for 2019, was $22.50 per hour. However, he was only paid $9.00 per hour. *See* Marques Aff. ¶ 4. Thus, plaintiff Marques is entitled to an additional $13.50 for each overtime hour he worked at Rizzo's in 2019, or $405.00 for each week ($13.50 times 30 hours). Because he worked for only one month (approximately four weeks) in 2019, he is entitled to $1,620.00 ($405.00 times four weeks) in unpaid overtime wages for 2019.

Overall, plaintiff Marques is entitled to $52,455.00 in compensatory damages for unpaid minimum and overtime wages.

### 2. Liquidated Damages

Plaintiffs request liquidated damages in the amount of 100% of their actual unpaid wages. *See* Am. Compl. ¶ 94(A); Prop. Findings ¶¶ 32-33. Under the NYLL, a defendant employer is

liable for liquidated damages equal to the full amount of plaintiffs' unpaid wages, unless the employer can demonstrate that it acted in "good faith." NYLL § 198(1-a). Because a showing of good faith is an affirmative defense under NYLL § 198, a defaulted defendant cannot carry that burden. *See* NYLL § 198(1-b); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229 at *4 (S.D.N.Y. Sept. 16, 2014); *Jaramillo v. Banana King Rest. Corp.*, 2014 WL 2993450, at *5 (E.D.N.Y. July 2, 2014). Therefore, plaintiff Aponte is entitled to $46,116.00 in liquidated damages, and plaintiff Marques is entitled to $52,455.00 in liquidated damages.

### 3.    Prejudgment Interest

In addition to liquidated damages, plaintiffs may recover prejudgment interest on their unpaid wages under NYLL § 198(1)(a). *See Andrade v. 168 First Ave. Rest. Ltd.*, 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)), *adopted*, 2016 WL 3948101 (S.D.N.Y. July 19, 2016). This is because – unlike the punitive aims of liquidated damages – prejudgment interest "compensate[s] a plaintiff for loss of use of money." *Reilly*, 181 F.3d at 265 (quoting *Chandler v. Bombardier Capital Inc.*, 44 F.3d 80, 83 (2d Cir. 1994)). However, "prejudgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages." *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016) (quoting *Maldonado v. La Nueva Rampa, Inc.*, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)), *adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

New York's prejudgment interest rate is 9% per annum, *see* CPLR § 5004, and is computed "on a simple interest basis." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR

§ 5001(b); *see also Marfia*, 147 F.3d at 91 ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation.") (citation omitted). In NYLL cases, courts often calculate prejudgment interest from the midpoint of the plaintiff's employment. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases).

The midpoint of plaintiff Aponte's employment is approximately October 7, 2016. Interest on her damages has accrued since that date at a rate of $11.37 per day ($46,116.00 x .09/365) and will continue to accrue at that rate until judgment is entered.

The midpoint of plaintiff Marques's employment is approximately May 1, 2017. Interest on his damages has accrued since that date at a rate of $12.93 per day ($52,455.00 x .09/365) and will continue to accrue at that rate until judgment is entered.

### 4.    Statutory Penalties under NYLL

The Wage Theft Prevention Act (WTPA), NYLL § 195(3), requires employers to provide a written statement "with every payment of wages" that includes, *inter alia*, the dates worked during that pay period, the rate or rates of pay and the basis thereof, gross wages, deductions, allowances, and net wages. *Id.* Additionally, "at the time of hiring," employers must provide a written wage notice – both in English and in the employee's "primary language" – that includes, among other things, "the rate or rates of pay and basis thereof," and any "allowances, if any, claimed as part of the minimum wage," including tip allowances. NYLL § 195(1). An employee may recover statutory damages of $250.00 for each workday that his employer failed to provide the wage statement required by § 195(3) and $50.00 for each workday that his employer failed to

provide the wage notice required by § 195(1), not to exceed damages of $5,000.00 for each violation. *See* NYLL §§ 198(1-b), (1-d).

In federal court, however, plaintiffs may not collect a statutory penalty, merely upon proof of the corresponding statutory violation, absent an injury-in-fact. In order to establish standing under the "Cases and Controversies" clause, *see* U.S. Const. art. III § 2, plaintiffs must show that they suffered a "concrete and particularized injury" as a result of the statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also id.* at 426 (holding that since a statutory prohibition or obligation does not "simply enact an injury into existence," Article III standing "requires a concrete injury even in the context of a statutory violation") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). In other words, a plaintiff "cannot solely rely on the fact that the defendant committed a statutory violation" to recover under the WTPA. *Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing WTPA claims where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

Here, as in *Neor*, plaintiffs claim that defendants failed to provide the requisite wage statements and notices during their employment at CSP in violation of NYLL. *See* Am. Compl. ¶¶ 2, 60, 83-84; Prop. Findings ¶¶ 38-40. However, they do not allege any facts showing that the lack of statements or notices caused any concrete and particularized "injury in fact." Therefore, plaintiffs cannot recover statutory damages under the WTPA. *See Neor*, 2023 WL 1797267, at *4; *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 373 (E.D.N.Y. 2022) (rejecting plaintiff's claim for statutory damages under the WTPA on inquest after default because "the allegations of the Complaint fail to establish a concrete injury resulting from Defendants' alleged failure to provide wage statements"); *Hernandez v. 99 Thai Playground LLC*, 2022 WL 18539303, at *7

16

(S.D.N.Y. Nov. 28, 2022) (same result, where plaintiff alleged "only a technical statutory violation [of the WTPA], and not a physical, monetary, or cognizable harm"), *adopted*, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023). Consequently, plaintiffs should not be awarded any statutory damages under the WTPA.

### 5. Title VII and NYCHRL Claims

Both Title VII and the NYCHRL permit victims of unlawful harassment to seek both economic and non-economic damages. *Villalta v. JS Barkats, P.L.L.C.*, 2021 WL 2458699, at *11 (S.D.N.Y. Apr. 16, 2021); 42 U.S.C. § 1981a(b)(3). In this case, plaintiffs seek only non-economic damages, in the amount of $250,000.00 each, for the emotional distress they suffered as a result of the harassment. *See* Prop. Findings ¶¶ 91, 95.

Title VII places a sliding cap on non-economic damages based on employer size. As relevant here, the cap for large employers (with 15-100 employees) is $50,000.00. *See* 42 U.S.C. § 1981a(b)(3)(A). However, "there is no cap on the amount of damages that can be recovered under the . . . NYCHRL." *Caravantes v. 53rd St. Partners, LLC*, 2012 WL 3631276, at *21 (S.D.N.Y. Aug. 23, 2012); *accord Villalta*, 2021 WL 2458699, at *11. Moreover, the NYCHRL permits an employee to sue an individual manager or supervisor for sexual harassment, including under the circumstances alleged here, *see Mitra v. State Bank of India*, 2005 WL 2143144, at *3 (S.D.N.Y. Sept. 6, 2005), whereas under Title VII, an employee is generally limited to suing her corporate employer. *See Legrá v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 2016 WL 6102369, at *2 (S.D.N.Y. Oct. 19, 2016) ("[I]ndividual defendants may not be held personally liable for alleged violations of Title VII, the ADA, or ADEA."); *Clarke v. Flushing Manor Care Ctr.*, 2003 WL 1338663, at *2 (S.D.N.Y. Mar. 18, 2003) ("Title VII does not allow for personal

17

liability, even as to supervisors[.]"). Consequently, I analyze both plaintiffs' emotional distress damages under the NYCHRL.

In considering emotional distress damages, "courts should consider the duration, severity, consequences, and physical manifestations of mental anguish." *Graham v. Prizm Associates, Inc.*, 2022 WL 20403411, at *6 (S.D.N.Y. Jan. 10, 2022). While every case must be evaluated on its own facts, the Second Circuit recognizes three general categories of damages for emotional distress: (1) "garden-variety;" (2) "significant;" and (3) "egregious." *Sooroojballie v. Port Authority of New York & New Jersey*, 816 Fed. App'x 536, 546 (2d Cir. 2020) (summary order); *accord Garcia v. Comprehensive Ctr., LLC*, 2019 WL 8274296, at *6-7 (S.D.N.Y. Nov. 21, 2019), *adopted,* 2020 WL 1435002 (S.D.N.Y. Mar. 24, 2020).

A claim is "garden-variety" if "the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury." *Sooroojballie*, 816 Fed. App'x at 546. Typically, garden-variety claims "lack extraordinary circumstances and are not supported by medical testimony." *Id.* Damages for garden-variety claims generally range from $5,000 to $30,000, *see Yu v. Shanghai Dumpling, Inc.*, 2023 WL 8438669, at *6 (S.D.N.Y. Oct. 5, 2023), but in some cases a garden-variety emotional distress claim may merit a higher award. *See, e.g.*, *Ravina v. Columbia Univ.*, 2019 WL 1450449, at *11 (S.D.N.Y. Mar. 31, 2019) (collecting cases).

A claim is "significant" when it is "based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses." *Sooroojballie*, 816 Fed. App'x at 546-47 (concluding that plaintiff's emotional distress damages were "significant" where defendants' harassment caused him to suffer "insomnia, anxiety, and depression, for which he was prescribed medication"; strained

his relationship with his family; "led to his excessive drinking"; and required multiple counseling sessions). "Significant" claims typically give rise to awards "'rang[ing] from $50,000.00 to $200,000.00,' but '[c]ourts have in some instances, upheld awards exceeding $200,000.00.'" *Id.* at 547 (quoting *Emamian v. Rockefeller Univ.*, 2018 WL 2849700, at *16, *18 (S.D.N.Y. June 8, 2018) (collecting cases)). A claim rises to the level of "egregious" only in limited cases "where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff." *Id.* "Egregious" hostile work environment claims "may merit larger awards," *Quinby v. WestLB AG*, 2008 WL 3826695, at *3 (S.D.N.Y. Aug. 15, 2008) (citation omitted), including awards "well in excess of $100,000." *Rainone v. Potter*, 388 F. Supp. 2d 120, 124 (E.D.N.Y. 2005) (citing *Ramirez v. Off–Track Betting*, 112 F.3d 38 (2d Cir. 1997). *See, e.g.*, *Angulo v. 36th Street Hospitality LLC*, 2020 WL 4938188 at *13 (S.D.N.Y. July 31, 2020) (recommending $300,000.00 in a "significant"/"egregious" case brought by a waitress who was raped by her supervisor, leading to suicide attempts, psychiatric hospitalizations, and substance abuse, all corroborated by medical evidence), *adopted*, 2020 WL 4936961 (Aug. 24, 2020); *Garcia*, 2019 WL 8274296, at *8 (recommending $175,000 where circumstances were "in some respects 'egregious,'" in that plaintiff suffered physical violence as well as verbal harassment for an extended period, leading to a PTSD diagnosis and lengthy psychological treatment, corroborated by an expert medical report).

In their Proposed Findings, plaintiffs argue that they should be awarded "significant damages" for the emotional distress they suffered. Prop. Findings ¶¶ 67, 81. However, the evidence they submit concerning their distress is "limited to plaintiff[s'] testimony," *Sooroojballie*, 816 Fed. App'x at 546, and is presented in fairly general terms, with no corroboration from other co-workers, family members, or health care practitioners. Indeed, although the conduct they describe is odious, it appears that neither plaintiff suffered any specific adverse consequences in their personal or

19

professional lives. Moreover, Aponte neither sought or obtained any treatment from healthcare professionals. I therefore conclude, using the "helpful framework" outlined above, *Sooroojballie*, 816 Fed. App'x at 547, that both plaintiffs present "garden-variety" emotional distress claims.

c.      *Nancy Aponte*

Plaintiff Aponte was sexually harassed by defendant Orlando "from the very start" of her employment at Rizzo's. Aponte Aff. ¶ 20. Orlando commented inappropriately on her clothing and her scent, *see id*. ¶¶ 20-21; "constantly" told her how "horny" she made him feel and that he wanted to have sex with her, *id*. ¶¶ 25-27; and "announced to the whole bar," during a dinner party, that "he would like to eat Nancy for dinner." *Id*. ¶ 24. His misconduct was not solely limited to inappropriate statements. Once, when Aponte stood on a stool to put away a wine delivery, Orlando "came up behind me and grabbed my buttocks." *Id*. ¶ 22. Additionally, he "would often rub himself on me when he walked behind me, intentionally pressing his groin against my buttocks." *Id*. Orlando's conduct made Aponte "feel terrible" and "depressed," but she believed that she "had to deal with this treatment" because of her financial situation as a single mother. *Id.* ¶ 28. Aponte attests that she "had difficulty sleeping and was absolutely scared for [her] safety." *Id*. ¶ 29. Plaintiff Marques, in his affidavit, states that he too observed Orlando's conduct, including many of the specific incidents recounted by Aponte. *See* Marques Aff. ¶ 50-57. As noted above, Aponte does not attest to any medical treatment or proffer any evidence from non-parties.

Taken as a whole, plaintiff Aponte's showing with regard to her emotional distress does not rise to the level of "significant." *Compare Manson v. Friedberg*, 2013 WL 2896971 (S.D.N.Y. June 13, 2013) (awarding $10,000.00 in a "garden-variety" case where employee endured consistent physical sexual harassment by her employer, causing her to suffer from low self-esteem, but did not seek psychiatric help) *with Caravantes*, 2012 WL 3631276 (awarding $150,000.00 in

an "egregious" case where employee was subjected to repeated genital touching, corroborated by video evidence, including non-consensual oral and anal sex initiated by the employer). That said, Orlando's conduct was reprehensible, and it is entirely plausible that an employee in Aponte's position would become depressed, anxious, and fearful, particularly after she complained about the offensive conduct to her other supervisors, *see* Aponte Aff. ¶ 31, but they did nothing to stop it. *See id*. ¶ 32. I therefore recommend that Aponte be awarded $20,000.00 in emotional distress damages against CSP and Orlando.

### d.    Angelo Gabriel Alves Marques

Plaintiff Marques was verbally harassed by two of his supervisors – Orlando and Taormina – on the basis of his sexual orientation. *See* Marques Aff. ¶¶ 17-18. Beginning a few months after he was hired, in approximately October 2015, Taormina began to mock his homosexuality by, among other things, asking if he wanted to date male coworkers and posing intrusive questions about his romantic life. *See id*. ¶¶ 22-23. Taormina did this "several times a week, often multiple times a day." *Id*. ¶ 27. Orlando became Marques's manager in the fall of 2016, and began harassing him a few months later, in approximately January 2017. *See id*. ¶ 28. Orlando told plaintiff's male coworkers to "watch out" for Marques, because he "liked men." *Id*. ¶ 29. Both Orlando and Taormina asked Marques if he wanted to have sex with various male customers. *See id*. ¶ 38. Additionally, Orlando would become angry "and shout things like, 'you're a fucking faggot' and 'you are making me angry, and when I get angry I feel like killing people.'" *Id*. ¶ 31. He did this "in front of customers, coworkers, and other managers," *id*. ¶ 33, approximately four or five times a week from 2017 to 2019. *See id*. ¶ 24. On three occasions, Orlando told Marques "that he was going to come to my house and beat me up." *Id*. ¶ 35. When Marques complained

21

about Orlando's behavior to Taormina, things were "better" for about two weeks, but then Orlando resumed his misconduct. *Id*. ¶ 37.

His supervisors' conduct made Marques feel "uncomfortable" and affected his ability to do his job. Marques Aff. ¶¶ 19, 39. He was "horrified to be targeted" because of his sexual orientation, *id.* ¶ 25, was afraid that he was in "physical danger" from Orlando, *id*. ¶ 32, and felt "emasculated, targeted, threatened, and humiliated" at work. *Id*. ¶ 46. In 2017, he saw a therapist approximately eight times, *see id.* ¶ 43, and he suffered from "terrible nightmares," which he attributed to the harassment. *Id*. ¶ 45. In 2017 and 2018, he took medication to sleep but stopped, "due to the effects on my health," while still employed at Rizzo's. *Id*. ¶ 49. Plaintiff Aponte corroborates, in general terms, that Orlando would "make fun of" Marques because of his sexual orientation, Aponte Aff. ¶ 36, and that Marques "would at times get very upset about how they were treating him." *Id*. ¶ 38.

Unlike Aponte, Marques did not suffer any unwanted touching. Like Aponte, however, he endured frequent and cruel verbal harassment, which understandably caused him to feel emasculated, targeted, threatened, and humiliated. Additionally, he attests that it was the harassment that caused him to see a therapist in 2017, *see* Marques Aff. ¶ 43, and describes additional symptoms, including nightmares – which lasted for several months after the end of his employment – and sleep difficulties. *See id*. ¶¶ 45, 49. However, his testimony concerning his mental health treatment, nightmares, and sleep problems is uncorroborated and therefore cannot support a damages award outside of the "garden-variety" range. *See, e.g.*, *Munson v. Diamond*, 2017 WL 4863096, at (S.D.N.Y. June 1, 2017) (awarding $15,000 where plaintiff attested to "distress, mental anguish, loss of self-esteem, anxiety, disturbed sleep, stomach problems, embarrassment, and migraines" as a result of verbal and physical sexual harassment by her supervisor, but did not provide corroborative evidence), *adopted*, 2017 WL 4862789 (S.D.N.Y.

Oct. 26, 2017). Moreover, Marques himself stops short of attributing his sleep problems to the misconduct of Orlando and Taormina. *See id.* ¶ 49. On balance, therefore, I recommend that Marques, like Aponte, be awarded $20,000.00 in emotional distress damages against CSP and Orlando.

### 6.      Attorneys' Fees and Costs

In their Proposed Findings, plaintiffs "request judgment to include attorneys' fees and costs as determined by the Court upon a motion by Plaintiffs to be made following trial on the remaining claims." Prop. Findings ¶ 82. There are no remaining claims, however, and there will be no trial. Moreover, plaintiffs were clearly instructed that if they intended to seek fees from the Defaulted Defendants, they were required to submit "contemporaneous time records authenticated by counsel," as well as documentation of out of pocket expenses, along with the Proposed Findings. Sched. Order ¶ 5. Plaintiffs were represented by attorney Jesse Rose, who is experienced in this area and has timely provided these materials in the past. *See, e.g.*, *Gabal v. Scoutsee Inc.*, 2019 WL 6220546, *5-6 (S.D.N.Y. Oct. 25, 2019) (awarding fees to attorney Rose, following default, upon receipt of billing records), *adopted*, 2019 WL 6211386 (Nov. 21, 2019). Having failed to submit the required records, counsel is not entitled to an award of fees or expenses.

## III.    CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs be awarded damages against Clinton Street Pizza, Inc. and Amedeo Orlando, jointly and severally, in the aggregate amount of $237,142.00, plus prejudgment interest, as follows:

For **Nancy Aponte**: $46,116.00 in unpaid minimum wages; $46,116.00 in liquidated damages with respect to her unpaid wages; prejudgment interest in the amount of $11.37 per day from

October 7, 2016, until the date judgment is entered; and $20,000.00 in compensatory damages for emotional distress on her harassment claim.

For **Angelo Gabriel Alves Marques**: $52,455.00 in unpaid minimum and overtime wages; $52,455.00 in liquidated damages with respect to his unpaid wages; prejudgment interest in the amount of $12.93 per day from May 1, 2017, until the date judgment is entered; and $20,000.00 in compensatory damages for emotional distress on his harassment claim.

Plaintiffs are directed to serve this Report and Recommendation on defendants at their last known address, by mail, and file proof of such service upon the docket.

Dated: New York, New York
July 19, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Dale E. Ho at 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Ho. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).